## Bukics v. Bukics

*John M. Saltzman,* for plaintiff.
*Stephen John Bukics Sr.,* pro se.
*J. Brian Johnson, Kathleen M. Collins* and *Lawrence J. Brenner,* for intervenor.

DIEFENDERFER, *J.,* July 25, 1988 — This is a case of first impression. Plaintiff, hereinafter referred to as "wife," and defendant, hereinafter re-

ferred to as "husband," are husband and wife. The husband was admitted to the Cedarbrook County Home on October 31, 1985. The Cedarbrook County Home is a public institution operated and maintained by the County of Lehigh for indigent people. The husband was admitted to the county home subject to the county home receiving medical assistance from the Pennsylvania Department of Welfare. Upon his admission, the wife was to receive his social security check in the sum of $529 each month and the county home was to receive the husband's Bethlehem Steel pension check in the sum of $471.41 each month. At the time of admission the wife did not work and was not eligible for social security benefits because she was not yet 62 years of age. The wife turned 62 years of age in July 1987 and would be receiving social security checks payable to her in the sum of $243 per month beginning September 1987. The county home advised the wife that she would then be receiving social security for herself and that they would be requiring an additional $243 per month from the husband's social security check. The county home thereafter applied to social security to become the representative payee of the husband's social security check and arrangements were based upon the wife's pension that the county home would remit certain funds to her.

On September 12, 1987, the husband and wife entered into an agreement for an order of support that the husband would pay to the wife $700 per month effective September 1, 1987. As a result of this support agreement, social security payments of the husband were to be attached in the sum of $500 and pension benefits of the husband from the Bethlehem Steel Corporation were to be attached pursuant to a qualified domestic relations order in the sum of $200. Appropriate notices were sent by the

Domestic Relations Office to Social Security and to the trustee for the Bethlehem Steel pension. Pursuant to said attachments, the Domestic Relations Office was advised on or about December 24, 1987 by the Social Security Administration that the husband's monthly benefit was $567 and in compliance with the summons of garnishment, 65 percent thereof would be attached so that there would be paid to the wife $368.60 of the husband's monthly Social Security benefits.* Also, the qualified domestic relations order was acknowledged by the Bethlehem Steel trustee and was being paid to the wife.

Upon the ascertaining of the actions taken as a result of the support order, the County of Lehigh filed a petition to intervene in these proceedings. The right to intervene is governed by Pa.R.C.P. 2327(4) which states that "the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action." Neither party has made an issue as to the County of Lehigh's right to intervene and neither will this court, as it would appear that the County of Lehigh would have the right to intervene as the monies being distributed are now affecting the County of Lehigh's claim for medical assistance of the husband.

This is obviously a case of first impression by this court. The amount of medical assistance to which the County of Lehigh would be entitled for the care and upkeep of the husband is covered by the Public Welfare Code, 62 P.S. § 101. et seq. and the regulations promulgated thereunder. The applicable regulation is found in 55 Pa. Code § 177.83 which states the following:

---

* The right of attachment to the Social Security benefits could not exceed 65 percent. See 15 U.S.C.A. § 1673, 29 U.S.C.A. § 1056.

"(2) *For persons in public or private skilled nursing and/or intermediate care facilities or institutions for mental diseases* — For the purpose of determining MA eligibility for persons receiving institutional care, all resources are considered available to meet the cost of care except:

. . . . .

"(ii) An amount necessary to maintain a spouse at an income level equal to the current SSI federal-state payment level in section 297.4(b)(3)(III) of this title (relating to procedures) or an amount necessary to maintain a family at an income level equal to the PA family size allowance in section 175.23(a) of this title (relating to allowance scheduled) for the county in which the dependent family resides. If the dependent family resides out-of-state the family size allowances in schedule no. 2 will apply."

The regulations provide a scheme of determining medical assistance eligibilty by taking into consideration all resources of the recipient of care and except therefrom the amount necessary to maintain a spouse pursuant to the formula of the regulations.

This case, therefore, calls into conflict the spouse's right to support, based upon the income of her husband pursuant to normal support proceedings pursuant to 23 Pa. C.S. §4321 et seq., and the county's right to medical assistance based upon the income of the husband.

The conflict between the wife's right to support and the institution's right to medical assistance was discussed in the case of *Septuagenarian v. Septuagenarian,* 126 Misc. 2d 699, 483 N.Y.S. 2d 932 (1984). In that case the wife/petitioner was requesting support of $1,125 per month from her husband of fifty years. The court in that case posed the question of whether the institutionalized spouse, receiving public assistance under the Medicaid program,

which requires that substantially all of his income be applied to his support and medical care, has sufficient means to support his or her spouse.

That court in trying to resolve the conflict stated the difficult policy provisions involved at page 934 as follows:

"On the other hand, to deprive women, and particularly women of petitioner's generation who, in many cases, were denied an equal opportunity to fulfill their potential in the employment market and are, therefore, dependent on their husbands for support, access to their husbands' pension and assets in their later years effectively sentences many of them to tremendous hardship and a complete disruption of their lives at a time when they are extremely vulnerable."

The court in that case upheld the wife's right to support but based its decision on the fact that the statute used to determine the amount of income available to the medical assistance recipient specially excluded payments for support of dependents required to be made pursuant to court orders. The statutory language in the State of New York stated that a legal obligation of support of the husband to the wife would be exempt in determining the amount of resources available.

This court could not find nor was it brought to this court's attention that there was any similar language in any statute in the Commonwealth of Pennsylvania. The only close statutory interpretation was the heretofore recited Pa. Code regulations.

These regulations are to be construed in the same fashion as statutes and in doing so, one must, therefore, look in the Statutory Construction Act of 1972, 1 Pa. C.S. §1501, et seq. Section 1921(a) states as follows:

"(a) The object of all interpretation and construc-

tion of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

It therefore appears that the intention of the General Assembly in deciding the income available to a recipient for medical assistance was to take into consideration all of the resources of the recipient, and that if the recipient was married and would be under an obligation of support to his wife, that that amount of support payable to the wife would be pursuant to the formula within the regulations and not any amount of support that would be agreed upon between the parties. The county would be entitled to the total resources of the recipient and in turn would be obligated to remit to the dependent spouse that amount as computed pursuant to the formula.

That being the case, the agreement for the order of support between the husband and wife in this matter, the husband being a recipient of medical assistance must, therefore, be vacated and all income of the husband is to be remitted to the County of Lehigh and the County of Lehigh is in turn directed to pay to the dependent spouse that amount as finally to be due and payable to her pursuant to the formula of the regulations.

## ORDER

Now, July 25th, 1988, for the reasons stated in the attached opinion, the agreement for order of support dated September 12, 1987 is hereby vacated and the attachments issued thereunder set aside. Total Social Security benefits of the husband and the Bethlehem Steel pension are to be paid to the County of Lehigh and the County of Lehigh is directed to pay to the wife an amount as determined by the appropriate regulations.